[Civ. No. 1489.    Third Appellate District.—August 25, 1916.]

LOUIS BRESLAUER, Respondent, v. McCORMICK-SAELTZER COMPANY (a Corporation), Appellant.

ACTION FOR PERSONAL SERVICES — AMOUNT OF COMPENSATION — PAYMENT OF EXTRA SALARY OUT OF SECRET FUND—EVIDENCE—SUPPORT OF FINDINGS.—In an action to recover an alleged balance due on account of salary as chief clerk and accountant of a general merchandise business, the amount of such salary entered on the books of the company and the receipted card in full for salary is not conclusive evidence of the amount of the plaintiff's compensation, where it is made to appear from the evidence that the plaintiff had for several years been paid an additional amount out of a "secret fund," and that such fund was a recognized part of the machinery of the company kept for paying extra salaries to good employees.

ID.—EVIDENCE—RECEIPT.—A receipt is never conclusive evidence, but is always open to explanation.

APPEAL from a judgment of the Superior Court of Shasta County. James G. Estep, Judge.

The facts are stated in the opinion of the court.

Carr & Kennedy, for Appellant.

W. D. Tillotson, for Respondent.

ELLISON, J., *pro tem.*—This action is brought by the plaintiff to recover of the defendant the sum of $375, balance alleged to be due on account of salary from February 28, 1914, to May 1, 1915.

Plaintiff has judgment for the amount claimed and the defendant appeals therefrom.

The complaint alleges that between the above dates plaintiff rendered services for defendant at its instance and request, each and every month, in the capacity of chief accountant and clerk.

That for said services defendant promised to pay him at the rate of $175 per month, which salary for said time amounted to $2,625.

That defendant had only paid him of said amount the sum of $2,250, leaving a balance due him of $375, which had not been paid and for which judgment is asked.

The answer denied that plaintiff's salary was fixed by agreement at $175 per month, but alleged it was fixed at $150 per month, and alleges that during said period of employment "the plaintiff received and accepted from defendant in payment of said salary the sum of $150.00 for each and every month of said time, amounting for said period to the total sum of $2,250.00, and alleges that said salary has been fully paid and satisfied."

The findings of the court followed closely the allegations and language of the complaint.

The principal contention of the appellant is that the finding of the court "that for plaintiff's services the defendant promised to pay him $175.00 per month," is not sustained by the evidence. That the evidence shows he was only to receive $150 per month, and that this amount has been fully paid to him.

It appears from the record that the defendant is engaged in the general merchandise business in the city of Redding, Shasta County, California, and has in its employ many persons. The plaintiff entered the employ of the defendant in

July, 1901, as chief clerk and accountant, and continued with it until May 1, 1915.

In February, 1910, and for some time prior thereto, the salary of the plaintiff appeared upon the books of the defendant as $125 per month, but for some time he had been receiving, in addition to his "book salary," $25 per month, which was paid to him at the end of the year in a check for three hundred dollars.

The plaintiff testifies that in the latter part of the year 1909, or the early part of 1910, he applied to the defendant for an increase in his compensation or salary. Quoting from his testimony: "I applied to Mr. Saeltzer for an increase of salary. What was said to me: 'You were to receive a book salary of $150 per month.' A salary on a separate fund known as the 'secret fund' of $25 per month. It was said at the time I would get the $25 per month at the end of the year."

He further testified that after this incident his salary was entered on the books of the defendant at $150 per month, which was paid each month, and that three hundred dollars was paid him each year out of the "secret fund," and that this arrangement was carried out from February 28, 1910, to February 28, 1914.

There is no conflict in the testimony as to the fact that the corporation kept a fund or account known as the "secret fund," and no dispute that plaintiff and other employees of the defendant received money from this fund, both before and after February, 1910. And no dispute that from February, 1910, to February, 1914, plaintiff was paid by defendant out of the fund three hundred dollars on four different occasions, making one thousand two hundred dollars in all. This gave him a compensation for his work between those dates of $175 per month. From February, 1914, to May 1, 1915, he only received $150 per month, and received nothing out of the secret fund. The extra $25 per month for the period between the last two dates is the basis of this action.

The defendant denies that it ever agreed to pay the plaintiff at any time any salary in excess of the $150 per month appearing on its books.

The conflict between the parties centers largely around the significance and meaning of this transfer of money from the "secret account" to the plaintiff.

The position of the latter being that the $25 per month was paid to him as a part of his agreed salary out of this fund; the defendant's position is that the three hundred dollars per year paid was a pure gift for good services rendered, and not the result of any contractual liability; that it could give it or not to the plaintiff in any years as it saw fit.

The plaintiff testified that Mr. Saeltzer gave as a reason for not having the books show he was getting $175 per month that he did not want the other employees to know what salary any particular employee was getting. In this he is corroborated by the testimony of Mr. Saeltzer, from which it appears a "secret fund" was kept, and from it other employees besides the plaintiff received extra compensation. His testimony shows that the "secret fund" was a recognized part of the machinery for transacting the business of the corporation.

As to its purpose and use, Mr. Saeltzer testified: "The secret fund was kept to pay extra salaries. To explain salary—for instance, we have a person in our employ who is working for $75 per month and that being a good man. And he says: 'I want to leave; I can make more money.' I don't want to give him more on the books, for the next man would want more salary if I started this. So I would pay him the extra salary out of the secret fund and the board would approve it."

We think this testimony of Mr. Saeltzer clears up the whole situation and corroborates the plaintiff.

It makes manifest that the defendant did not want the books to show, in all cases, the salary that was being paid to an employee, and that they did not. That the "secret fund" was kept for the purpose of paying "the extra salary" (to quote his testimony), extra salary meaning salary agreed upon in excess of that entered on the books, and that plaintiff was paid one thousand two hundred dollars out of this "secret fund" after his salary was raised on the books from $125 per month to $150. That the plaintiff did have an arrangement with the defendant that he was to get $25 per month in addition to his book salary of $150 per month seems clear. And the evidence shows he did receive it for four years. His book salary was raised from $125 per month to $150 per month February, 1910. After this, according to the testimony of Mr. Saeltzer, he secured, in addition to his book

salary, the following sums: January 1, 1911, three hundred dollars; May 23, 1912, three hundred dollars; December 22, 1913, three hundred dollars; December 24, 1914, three hundred dollars.

The above testimony of the defendant's manager amply supports the plaintiff's contention that there was a "secret fund." That out of it he was paid three hundred dollars per year extra compensation for several years, not as a gratuity, but as of right under the terms of his contract with the defendant, and that he is entitled to it as of right for the period embraced herein.

Appellant further contends that the plaintiff's testimony is inconsistent with the entries made in the books of the corporation by himself. It is true that for the period here involved the plaintiff's salary was entered upon the books of the corporation as $150 per month. But in view of the plaintiff's testimony that it was a part of his agreement with R. M. Saeltzer that the books should show a salary only of $150 per month, the discrepancy between his actual salary and the book entries stands explained. The entries on the books were in accordance with the contract.

There is other evidence in the record bearing upon the finding under discussion, both in favor of the plaintiff and the defendant. We have examined it all with care, but enough has been referred to to show that the finding of the learned trial judge that plaintiff was working under a contract for an agreed compensation of $175 per month finds substantial support in the evidence.

2. It appears that during the later months of plaintiff's employment the system of paying employees was changed to a time-card system, and employees receipted on the card. The plaintiff signed these receipts. The receipts were worded as follows:

"Received payment in full for period and amount stated, and time recorded on this card."

Counsel for appellant claims that this should be held conclusive on plaintiff that he had been paid his full agreed compensation.

A receipt is never conclusive evidence—is always open to explanation. The explanation contained in the record is sufficient to prevent this receipt from concluding plaintiff.

If the defendant did not want the books of the corporation to show the salary plaintiff was receiving, and the evidence is ample for the drawing of such a conclusion, then it did not want, for same reason, the receipts to show it. It would have been an idle act to have the books show that he was getting only $150 per month, and follow this with a receipt showing he was receiving $175 per month.

3. The stubs of checks and resolutions of the board of directors made months and years after the contract was made with plaintiff were self-serving declarations and properly excluded.

4. It is claimed the court erred in failing to find upon a material issue raised by the answer. In the brief of counsel the allegation of the answer upon which it is claimed no finding was made is quoted as follows:

"That during said time defendant paid to plaintiff and plaintiff received and accepted in payment of said salary, the sum of $150.00 for each and every month of said time, amounting for said period to the total sum of $2250.00."

To properly appreciate the significance of the above language, it must be considered in connection with its context. It is found in paragraph IV of the answer. The first part of the paragraph denies that plaintiff has not been paid all of his salary and, proceeding, says: "Defendant alleges that for said services so rendered by plaintiff to defendant during said time mentioned in the complaint, plaintiff agreed to accept and defendant promised to pay to plaintiff a salary at the rate of $150.00 per month for each and every month during said time and amounting to the total sum of $2250.00" (and alleges that during said time defendant paid to plaintiff and plaintiff received and accepted from defendant in payment of his salary the sum of $150 for each and every month of said time, amounting in said period to the total sum of $2,250, and alleges that said salary has been fully paid and satisfied).

The court has found that the agreed salary was $175 per month, and that of it only $150 per month has been paid, and that the balance is unpaid and due.

The part of the answer above quoted and placed in parentheses, when considered with its context, is no more than a statement that the agreed salary was $150 per month, and

that the full amount computed at that rate has been paid and accepted by defendant.

The statement in the answer that his salary was to be $150 per month is the pleader's statement of what the contract of employment was as originally made, and is not and was not intended as a statement that after the services were performed, there was an accord and satisfaction in and by which plaintiff and defendant settled a disputed claim on the agreed basis of $150 per month for the period.

. Viewed in this light, the findings of the court fully cover the issue made.

The judgment is affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 23, 1916.